Again, Mr. Rake. May it please the Court. The PTAB ignored the… So which claims do we have here? Just 15. Just 15. Okay. And so why… and with respect to 15 is dependent on what? 1 and 13? Yes. And the Board's reasoning here related only to the elements that are in 1 and 13, right? Correct. So why isn't this like max linear? I'm sorry, I didn't hear you. Why isn't this like max linear so that there's a collateral estoppel requiring the Board to consider the dependent limitations? Why shouldn't the… why shouldn't we remand for the Board to consider the dependent limitations? Because they… You know the max linear because you cited it and relied on it, right? Yes. Why isn't this like max linear? I'm drawing a blank right now, Your Honor, I apologize. What max linear held is that if you have a dependent claim which has been held not unpatentable because of a limitation in the independent claim and the independent claim is held invalid, that is collateral estoppel and that issue is precluded by collateral estoppel and has to go back to the Board for consideration of the additional limitations of the dependent claim, that is 15 here, which haven't been addressed, then yes, it applies. Is that how you used max linear in your blue brief? I… How did you use max linear? I don't… I'm drawing a blank on what we have. It's in your table of contents. I'll find it, Your Honor, I apologize. Okay. Yes. So this is the representative claim theory, right? When the parties just target one claim as being representative of all claims, then what that stands for is that you've waived any opportunity to argue any of the claims separately. Yes, Your Honor. I'm sorry, I'm looking at it right now and honestly, I don't know how I missed it. So yes, we've argued that they've waived the argument to have the remand back to the court to consider. To consider other claims other than claim one. Correct. The limitations of claim one. Because that was all they… There was no other use of max linear, right? Not that I'm aware of. No. And so yes, so because the Board only looked at certain limitations with respect to claim one and didn't apply the secondary limitations of 15, then we believe they've waived the right to have the remand back on 15 and that it should be found to be unpandered. Assuming that you're right about the limitation that's included in claim one. Correct, Your Honor. Is this the Tickner case? This is the Tickner patent. So what we were essentially arguing in Tickner and what the court relied on was that for all of the claims was that they found that the LEDs were not in thermal communication with the optic coupler and that there was no evidence showing or that we didn't have a showing that the optic coupler was connected to the housing 320. But our position is that Tickner discloses every single one of those limitations, including the heat spreader and the connection of the heat sink. Do I remember correctly that in your petition, your assertion for how it was in thermal communication, you said that they physically contacted? That's correct. And what support is there in the Tickner reference itself for that proposition? Sure. If you would look at page six of the reply brief, and it's also appendix 1687, there's a figure five that's shown there. That is a cross-section of figure eight when it is put together. Figure eight. Oh, this is the theory that relies on the substrate 306, right? I'm sorry, Your Honor. This is the theory that relies on substrate 306. Correct. And then the next question is, to what extent did you rely on substrate 306 in your IPR petition as a basis for showing that all these different devices are in thermal communication with each other? We had testimony from Dr. Roberts regarding the layout of the products. If you look at appendix 1689 and the exploded version of figure eight, Dr. Roberts was talking about some of the components of figure eight and how the LED arrangements and the coupler arrangement. There's an aperture in the coupler. There's an LED arrangement that can be square, can be round. He said that the aperture conformed or was conformed. Did he discuss the substrate 306? He did not specifically discuss the substrate 306 in the paragraphs that we cited from him. However, because he was talking about figure eight and when he says in his, and he says specifically, so it's in appendix 128. After he shows you the talks about the complete arrangement of the LEDs and the aperture and in the coupler, he says basically that Tickner discloses that the LED package 300 being aligned with and mounted on, and he says the heat sink 330, and I recognize that's an error. It's a heat spreader 330. Allowing heat to flow from the LED package 300 through the heat sink 330. That's also a heat spreader. So he is basically talking about the arrangement and then talking about when it's together that the substrate is basically in contact with coupler 330. It doesn't say that last part though. You're correct. It doesn't say that, but when it's connected and mounted, it looks like figure five, which is APX 1687. And so if you look at APX 1687, and 1687 doesn't have all of the reference numbers in it, but what we show on page six of our reply brief is some of the reference numbers included, and we show where the LEDs are located and where the substrate is located. And what it demonstrates is that when this is put together, the substrate overlaps the portion of the aperture, and a portion of the substrate is included in section 330G of the coupler. But because the coupler is pushed all the way up against the heat sink, that means that the substrate and the LEDs are contacting the coupler 330. And so looking at figure five, you've got heat coming from the LEDs. You've got them going into the substrate. You have the substrate connected to the coupler, and you have the coupler connected to 320. So when Dr. Roberts talks about heat flowing, being aligned with and mounted on, and the heat flows from LED package 300 through heat spreader 330, the heat is spreading through heat spreader 330, it has to go somewhere. Heat spreaders don't dissipate heat. They go to heat sink. The only heat sink it can go to is 320, which is a direct connection shown in figure five. There's a direct connection of the heat spreader to the heat sink 320. Okay, anything further? I do, Your Honor, one more point. The one other thing I wanted to point you to, that was brought up during the petition, was that at appendix 1700, we cited to the board that in certain exemplary embodiments, the reflector housing 320 is configured to act. I'm sorry, you said appendix 1700? Appendix 1700. That's not in your petition. Pardon? Your petition is not appendix 1700. I'm citing the language. I don't have the specific petition section. It was cited, but I'm citing the language that was cited. Your appendix site in the petition where you actually discussed this claim element is only at page A128. I found nothing else in the record to show where you discussed this particular claim limitation elsewhere in your petition. Apologies, Your Honor. At appendix 310, which is actually in the decision, the board specifically references that we talk about the reflector housing is formed integrally with the heat sink, and the reflector housing 320 is configured to act as a secondary heat sink for conducting heat away from the LEDs. So we did have reference in our arguments to the board that 320 was in fact a heat sink, and combined with Dr. Robert's arguments that when the unit is put together, the heat flows from the LEDs through the coupler, and we're saying it goes to 320. If you look at the figures, that's the only way the heat can get to 320. Via substrate 306, right? Via substrate 306. OK. Nothing further, Your Honor. Question. Have you read the Max Linear text? I did very early on, Your Honor. And quite frankly, when we were looking at this, I was, Your Honor, we thought there were other issues that were more relevant and didn't expect that one to be taken up immediately. I apologize. All right. Mr. Nazeri. Thank you, Your Honors. Kevan Neruzzi for LSG. Sir, putting aside the question of whether the issue has been argued, this is exactly like Max Linear, isn't it, in the sense that the independent claims were invalidated, and that's collateral estoppel with respect to this claim as well, and the only board decision here is that the claim is invalid. The only board decision here relates to features in the independent claims that were held invalid, right? I don't think so, Your Honor. OK. So why is that? So the claim that we're talking about right now for purposes of the appeal and the board's decision is Claim 1, although the claim that's left in dispute is Claim 15. Well, that was the same thing. And so I'd like to build from there, which is that there were a lot of attacks on Claim 1 based on a lot of different prior art references. But the only – What difference does that make? I mean, Claim 1 has been held invalid, right? Based on other references. Well, that's the same thing in Max Linear. The only theory that they have to reach Claim 15 is based on Tickner. Well, it's not a question of what their theory is. That wasn't my question. I was putting aside the question of whether they had properly raised the issue, but the fact is that the only basis for the board's finding that Claim 15 was not unpatentable was that it depended from Claim 13 and 1, which at that time had not been held invalid, right? So, Your Honor, I think what you're saying is that you potentially read Max Linear to mean that if a petitioner challenges the independent claim based on two different grounds and only challenges a certain dependent claim based on one ground and the independent claim is only successful as to the reference that does not reach the dependent claim, then the dependent claim is just sort of presumed to be invalid as well, even though there was no relationship. No, no, that's not what Max Linear says. But that's what this says. If you have a dependent claim and the independent claim has been held unpatentable, that holding with respect to the independent claim carries over to the dependent claim, and the only remaining issues are with respect to the unique elements of the dependent claim. Well, Your Honor, and be that as it may, I don't believe that that holding extends to the situation where the petition's only challenge to the dependent claim is based on a reference that was found by the board to never meet a limitation of the independent claim. I don't understand what you're saying. And so let me clarify in the following manner. Chu, for example, has been found to meet Claim 1 of the 844 patent and to invalidate that claim. But Chu was never asserted as to Claim 15. So what? Only Tickner was. So what? That's exactly Max Linear. Tickner doesn't meet Claim 1, Your Honor. Well, that's not the question. The question is whether once you have a claim invalidated as a matter of collateral estoppel, whether that carries over to another case. And Max Linear says it does. It carries over as to Claim 1 itself. Okay, so Claim 1's gone. And the only reason that the board gave here for not finding Claim 15 unpatentable was that Claim 1 was patentable. No, Your Honor. No? No. Why am I wrong about that? The board's reason is that the only theory asked to Claim 15 is based on Tickner, and Tickner's Claim 15 includes— You're not addressing my question. I am. It did not find that the limitations of Claim 15 itself, the dependent claim limitations, rendered it not unpatentable. It didn't discuss them at all, right? So, Your Honor, Claim 15 includes all the limitations of Claim 1. And the limitations of Claim 15 that are part of Claim 1— But my statement is correct, is it not, that this other limitation in Claim 15 was never discussed by the board, right? That's true because it was knocked out at the institution phase. And nobody talked about Tickner after institution at all, not even in the oral hearing. I'm not talking about Tickner. I'm talking about the LED chip package limitation. Do you have Claim 15 in front of you? I know Claim 15, Your Honor. Okay, so the board did not focus in its decision on the limitation of Claim 15, right? Because the board—that's true because the board deemed that it did not need to because that limitation of Claim 15 builds on an earlier limitation of Claim 1. Exactly. And what Lex and Lear says, if that claim—independent claim is held invalid, that carries over as a matter of collateral estoppel into the claim in the other IPR. Not to invalidate a dependent claim based on a different reference in theory that could never reach a limitation of the independent claim to begin with. That's my position. Do you have a case to support what you're saying? What are you thinking about? Are you thinking about a case like the petitioner's burden to present issues? What is it that you're relying on for your answer? Yes, Your Honor. So they have to put forth a theory that supports the invalidity that they want to achieve. Their theory as to Claim 15 only relied on Tickner. So they can get all the mileage that they want out of invalidating Claim 1, and with respect to— So I agree with you that the IPR at issue—what about the IPR in which Claim 1 was found invalid, the other IPR? And Claim 1 is found invalid. That's not appealed, so Claim 1 is now invalid. Did that other IPR challenge Claim 15? No. But, Your Honor, also in this IPR, I believe Claim 1 was found invalid based on other references. Have you read Max Line? I have briefly looked at it, Your Honor, and I don't believe that it extends to the breadth that perhaps you may have in mind. I'd like to talk about—well, let me make two comments on this. One is clearly the Board and the parties did not have any notion whatsoever that the finding of lack of unpatentability as to Tickner with respect to Claim 15 becomes irrelevant in light of a finding of invalidity as to Claim 1 based on other references. Well, of course not, because it happened after the Board decision. What did happen after the Board decision? That the invalidity, the unpatentability of Claim 1 was established. I don't believe so, Your Honor. I believe it was decided in this decision itself. I'm not talking about this. I'm talking about this IPR, and I'm talking about the fact that in this IPR, I believe, and let me just confirm for you, yes, Claim 1 was found invalid based on other references in this IPR. But Claim 15 was not because there were no references that were directed to Claim 15 other than Tickner. And Tickner could not meet the limitations of Claim 15 that are part of Claim 1. By the way— I'm sorry. That doesn't make any sense to me. The Board in this case held that Claim 1 was unpatentable and then said Claim 15 is not unpatentable because Claim 1 is patentable? Your Honor, yes, because the Board is assessing—it's not about Claim 1, Your Honor. Claim 15 is Claim 15. It incorporates the limitations of Claim 1. And the only theory they have on Claim 15 is asked at Tickner, and their theories are assessed ground by ground. So the fact that CHU invalidates Claim 1 doesn't get them to Claim 15 because they don't have a Claim 15 theory on CHU. Right? So Tickner is the one that applies to Claim 15. And if we could focus for a minute on the limitation of Claim 15, could I do that with you? The limitation of Claim 15 is a more stringent version of the same limitation of Claim 1 that the Board primarily found lacking in Tickner. And that is the requirement in Claim 1 that the heat spreader facilitates transfer of heat from the LEDs to the heat sink. Now, in their theory, they rely on Figure 8, and they call the heat spreader, the Structure 330, which is actually an optical coupler. It's never called a heat spreader in Tickner. It's called the optical coupler. The optical coupler is on the outside on the top of what they call the heat sink Structure 320. The LEDs are on the other side. They're on the bottom side. And so what the Board said is you can't meet the requirement of Claim 1 that, quote, heat spreader facilitates transfer of heat from the LEDs to the heat sink when you have LEDs, heat sink, and then heat spreader on top. Claim 15 requires that same thing more precisely because it says the heat has to go directly from the LEDs to the heat spreader. So the relationship has to be even closer between the LEDs and the heat spreader in Claim 15 than in Claim 1. So the same limitation that was the distinction over Tickner that the Board relied on directly applies to Claim 15, and they don't have any other theory to meet Claim 15. Anything more? Your Honor, I can't explain the basis for the Board's decision and why it's correct as to its findings. If the question is could the Board or should the Board have said more about Claim 15 itself, the answer to that is nobody debated Tickner after the Board's institution decision. The institution decision denied the Tickner ground. It was initially out of the proceeding. Then SAS Institute issued. Then the Board said, OK, well, I'm bound to throw Tickner back in because of SAS Institute. Does anybody have anything more to say about Tickner? Seeing that there was no reason to pile on with the Board at that point because it had already found against Tickner, nobody said anything about Tickner anymore. No one said it in the POR, in the reply, or at the oral argument. And so I think that if there's going to be some kind of an estoppel consideration as to Claim 15 based on the lack of separate argument about Claim 15, this would certainly be the wrong case for it due to the intervening event of SAS Institute and the institution decision. At a minimum, again, if that is where the Court is inclined to go, I would ask that you allow the proceeding to go back and for the development to be made on Claim 15 so that the Board can separately reach Claim 15. And I think the Board's decision as to Claim 1, as I just explained, would lead to the consequence that it will find that Claim 15 is not met by Tickner because the arrangement of elements cannot meet that limitation of Claim 15. OK, just so that I can be clear about this, my understanding is that in the 844 IPR, that is the first case we considered, Claim 1 was held unpatentable. That's true in that case. This is also an 844 IPR brought by SATCO. Oh, OK, I understand. And Claim 1 was found invalid in this case in view of different prior art. Correct. Or is it the same prior art? Some of the same prior art as well. OK, all right. Thank you. Thank you, Your Honor. Mr. Riggs? Very brief comments, Your Honors. One, in respect to the issue we just discussed, the issue is really the patent owner never argued patentability of Claim 15 on the separate limitation of Claim 15. It relied only on the patentability of Claim 1 and therefore waived any argument that Claim 15 is independently patentable. The other issue was to Judge Chen. You had raised the issue about through the substrate. I just wanted to inform you that the LED package that's referenced in the Roberts Declaration includes the substrate 306, and that's at Appendix 1699, Paragraph 40. If there are no further questions, Your Honor. OK. Thank you. Thank both counts of cases submitted. That concludes our session for this morning. All rise.